**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Auto-Owners Ins. Co., <br><br>          Plaintiff/Counter-defendant, <br><br>v. <br><br>Andrew Hancock, <br><br>          Defendant/Counter-claimant. | No. CV-21-00903-PHX-DLR <br><br>**ORDER** |

Pending before the Court are fully briefed cross-motions for summary judgment. (Docs. 62–68.) The Court grants summary judgment for Plaintiff/Counter-Defendant Auto-Owners Insurance Company and denies summary judgment for Defendant/Counter-Claimant Andrew Hancock.

**I.     Background**

Hancock traveled to the Tonto National Forest in March 2021 to ride dirt bikes with a friend. (Doc. 63-3 at 2.) The two met at the intersection of Beeline Highway 87 and Forest Service Road 3456. (Doc. 62-3 at 8.) They then rode their dirt bikes on Road 3456 to Bartlett Lake. (*Id.* at 11.) On the return trip, Hancock collided with Robert Thurman, who was driving a 2019 Can-Am Maverick. (Doc. 64-1 at 2.) Officers from the Maricopa County Sheriff's Office ("MCSO") responded to the accident, utilizing a barge to cross Bartlett Lake and an MCSO all-terrain vehicle ("ATV") to arrive at the collision site. (Doc. 63-4 at 6.) Hancock appeared to be bleeding from the back of his head, had a deformity to

1  his left knee, and a laceration on his right arm, and was helicoptered to Scottsdale Osborn
2  Hospital. (*Id.*)

3  Because his medical expenses exceeded Thurman's insurance coverage, Hancock
4  sought compensation from his automobile insurer, Auto-Owners, via the Underinsured
5  Motorist ("UIM") provision in his insurance policy. (Doc. 63 at 2.) Nicholas Kracher, a
6  claims representative for Auto-Owners, exchanged emails with Hancock's attorney and
7  stated the UIM coverage applied. (Doc. 63-13 at 3.) Kimberlee Hillock, attorney for Auto-
8  Owners, questioned Kracher's decision, stating the road where the accident occurred
9  appears to be a "hiking trail through the Tonto National Forest." (Doc. 63-14 at 2.)
10 Kracher's emails and deposition reflect that he previously understood the crash site to be a
11 service road. (Docs. 63-14 at 2; 64-4 at 5–7.)

12 Subsequently, Auto-Owners brought this action seeking a declaratory judgment that
13 the UIM provision excludes Hancock's claim. (Doc. 62 at 1.) Hancock counterclaimed
14 for breach of contract and bad faith. (*Id.* at 2.) Auto-Owners contends the UIM provision
15 is inapplicable for two reasons: (1) Thurman's Can-Am Maverick was designed primarily
16 for off-highway use, and (2) the accident did not occur on a public road. (Doc. 62 at 7,
17 11.) Indeed, Hancock stated in his deposition that Thurman's Can-Am Maverick was
18 marketed as a "recreational vehicle for off-road and adventure use." (Doc. 62-3 at 26.)
19 Hancock, however, contends that "because [the site of the accident] is a roadway open for
20 public travel under the jurisdiction of the government, in this case, the National Forest
21 Service," the accident happened on a public road and therefore the UIM provision covers
22 his claim. (Doc. 63-2 at 17.)

23 Both parties cross-moved for summary judgment on Auto-Owners' declaratory
24 judgment claim and Hancock's breach of contract counterclaim, which rise or fall together.
25 (Docs. 62–63.) No party has moved for judgment on Hancock's bad faith counterclaim.

26 **II.    Standard**

27 When parties submit cross-motions for summary judgment, the Court must consider
28 each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside*

*Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question. *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Analysis**

The UIM provision in Hancock's insurance contract states: "Underinsured automobile does not include an automobile that is designed for use primarily off public roads except while actually on public roads." (Doc. 62-2 at 29.) The parties dispute whether Thurman's Can-Am Maverick falls within this exclusion.

To resolve this question, the Court first must interpret the policy language, which is a question of law. *Nat'l Fire Inc. Co. v. James River Ins.*, 162 F. Supp. 3d 898, 903–04

(D. Ariz. 2016). The UIM policy does not define "public roads." When a policy does not define a term, the Court ascertains its meaning under the relevant state's law. *Country Mut. Ins. Co. v. Leffler*, 705 F. App'x 549, 550 (9th Cir. 2017).

In interpreting a similar UIM exclusion, the Arizona Court of Appeals adopted the following definition:

> A public road means those areas which a reasonable person using the highway, having cognizance of all pertinent road signs and markings, would consider to be intended for vehicular travel, including the berm or shoulder of the highway if the same is improved for vehicular travel.

*Gittings v. Am. Fam. Ins. Co.*, 888 P.2d 1363, 1368 (Ariz. Ct. App. 1994). In turn, A.R.S. § 28-1171(3) defines "highway" as:

> the entire width between the boundary lines of every way publicly maintained by the federal government, the department, a city, a town or a county if any part of the way is generally open to the use of the public for purposes of conventional two-wheel drive vehicular travel. Highway does not include routes designated for off-highway vehicle use.

And § 28-1171(6) defines "off-highway vehicle," in relevant part, as "a motorized vehicle that is operated primarily off of highways and that is designed, modified or purpose-built primarily for recreational nonhighway all-terrain travel," including "a tracked or wheeled vehicle, utility vehicle, all-terrain vehicle, motorcycle, four-wheel drive vehicle, dune buggy, sand rail, amphibious vehicle, ground effects or air cushion vehicle[.]"

The Court next must apply these definitions to the totality of undisputed facts and determine whether the exclusion applies, either because Thurman's Can-Am Maverick is designed primarily for use off public roads or because the accident occurred off public roads.

The totality of undisputed evidence establishes the Can-Am Maverick was designed primarily for use off public roads. In their depositions, both Thurman and Hancock state the Can-Am Maverick was used for off-road, recreational use. (Docs. 64-1 at 2; 63-2 at 26.) Thurman purchased a special insurance policy separate from his ordinary automobile insurance for the Can-Am Maverick. (Doc. 62-3 at 70.) And the Can-Am Maverick was

marketed primarily for off-road use. (Docs. 64-1 at 2; 63-2 at 26.) Given this evidence, no reasonable jury could conclude the Can-Am Maverick was designed primarily for anything other than use off public roads.

The totality of undisputed evidence also establishes the accident occurred off public roads. In looking at maps offered by both parties, Road 3456 is a dirt road with no pavement or improvements, and clearly designated as a "road not maintained for passenger cars." (Docs. 62-5; 62-8; 62-9; 66-3.) Indeed, Auto-Owners retained licensed Arizona investigators who were unable to reach the crash site due to large rocks and boulders on the trail, despite traveling in a four-wheel drive Jeep Grand Cherokee. (Doc. 62-7 at 2–3.) What's more, MCSO officers reached the crash site by barge and ATV. (Doc. 63-4 at 6.) No reasonable person untrained in the law or insurance could conclude from these facts that the accident occurred on a public road. *See Gittings*, 888 P.2d at 1368.

In arguing otherwise, Hancock notes both drivers were cited by MCSO under A.R.S. § 28-701(A) for failure to control speed to avoid a collision on a highway. (Doc. 63 at 13.) But the Arizona Court of Appeals has cautioned against defining "public roads" solely "by reference to statutory definitions, especially those dealing with the Department of Transportation and the highway system, as opposed to automobile insurance." *Gittings*, 888 P.2d at 1365. Though these definitions help add dimension to the phrase "public roads," what ultimately matters is whether reasonable people would consider the road intended for vehicular travel. For reasons already discussed, the answer to that question is no.[1]

**IV.   Conclusion**

Based on the totality of undisputed evidence, no reasonable juror could conclude the accident occurred on a public road, or that Thurman's Can-Am Maverick was primarily designed for use on anything other than off public roads. The accident therefore did not involve an underinsured automobile as that term is defined in Hancock's insurance policy.

---

[1] In any event, Thurman's citation was dismissed because the state court determined he did not violate A.R.S. § 28-701(A). (Doc. 64-1 at 3.) The citation evidence does not create a genuine factual dispute because no reasonable jury could find for Hancock on the basis of this evidence, given the totality of undisputed evidence favoring Auto-Owners.

Accordingly,

**IT IS ORDERED** as follows:

1. Auto-Owners' motion for summary judgment (Doc. 62) is **GRANTED** and Hancock's motion for summary judgment (Doc. 63) is **DENIED**.

2. The parties shall appear telephonically on **August 24, 2023, at 11:00 a.m**. before Judge Douglas L. Rayes to set a trial date for Hancock's bad faith counterclaim. Call-in information will be provided to the parties via separate email.

Dated this 27th day of July, 2023.

Douglas L. Rayes
United States District Judge